# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **BRANDON MOODY** | : | CIVIL ACTION |
| *Plaintiff, pro se* | : | |
| | : | NO. 23-0770 |
| **v.** | : | |
| | : | |
| **LAUREL HARRY,** *et al.* | : | |
| *Defendants* | : | |

NITZA I. QUIÑONES ALEJANDRO, J.                                                      MARCH 21, 2024

## MEMORANDUM OPINION

**INTRODUCTION**

    Plaintiff Brandon Moody ("Plaintiff") has been incarcerated in various state facilities since 2008 and is currently housed at the State Correctional Institution Phoenix in Collegeville, Pennsylvania. Plaintiff alleges that, since February of 2022, he has been in the Intensive Management Unit, where he has endured 19-20 hours a day in solitary confinement, living in a cell that is illuminated 24 hours a day. Plaintiff further alleges he suffers from various mental and physical health disorders.

    On February 24, 2023, Plaintiff commenced this action asserting claims for, *inter alia*, violation of the Eighth and Fourteenth Amendments of the United States Constitution. By Order dated February 5, 2024, (ECF 52), this Court granted, *in part*, Defendants' motion to dismiss, allowing Plaintiff's Eighth and Fourteenth Amendment claims against Defendants to proceed to the next phase.

    Before this Court is Plaintiff's motion for a preliminary injunction, (ECF 4), filed pursuant to Federal Rule of Civil Procedure ("Rule") 65, in which Plaintiff requests that he be placed in the Residential Treatment Unit of the prison's general population and be provided with appropriate

psychotherapeutic counseling and medical care. (ECF 4). Defendants[1] oppose the motion. (ECF 36, 53). The issues raised in the motion for preliminary injunction are fully briefed and are ripe for disposition.[2] For the reasons set forth herein, Plaintiff's motion for a preliminary injunction is denied.

**BACKGROUND**

Briefly, the facts relevant to Plaintiff's motion for a preliminary injunction are as follows:[3]

In May 2008, Plaintiff was convicted of homicide in the Philadelphia Court of Common Pleas. Before Plaintiff was sentenced, a Philadelphia Probation and Parole Department probation officer prepared a pre-sentence report noting that Plaintiff had a diagnosis of bipolar disorder and attention deficit/hyperactive disorder ("ADHD"). On July 14, 2008, Plaintiff was committed to the custody of the Pennsylvania Department of Corrections (the "DOC") where it was recorded that he had a history of treatment for his bipolar disorder and ADHD. While in the DOC's custody, Plaintiff has been diagnosed with and treated for additional ailments, including mood disorder, major depressive disorder, complex post-traumatic stress disorder ("C-PTSD"), irritable bowel syndrome, nutritional deficiencies, gastritis, and gastro esophageal reflux disorder.

On March 25, 2021, while incarcerated at the State Correctional Institution ("SCI") Camp Hill, Plaintiff was involved in a physical altercation with a correctional officer and, as part of his discipline, was placed in solitary confinement. Plaintiff subsequently pled guilty but mentally ill to the assault.[4] He was later transferred to SCI Rockview.

On April 9, 2021, Plaintiff was evaluated by prison psychiatrist, Dr. Douglas Weber, who recommended that Plaintiff be classified a stability code D

---

[1]   Defendants are Tabb Bickell, Christopher Collins, Tammy Ferguson, Richard Gross, Laurel Harry, George Little, Jaime Luquis, Robert Marsh, J. Rivello, Michael Rowe, Bobbi-Jo Solomon, and Jaime Sorber (collectively, "Defendants").

[2]   This Court has also considered Plaintiff's replies. (ECF 45, 57).

[3]   The facts relevant to the instant motion are largely not in dispute, and where disputed are construed in Plaintiff's favor.

[4]   A psychiatrist, Dr. Brett DiGiovanna, prepared a report and attributed Plaintiff's behavior to his PTSD. (Compl., ECF 2, at ¶¶ 112–14; Pl's Reply, ECF 57, at pp. 148–50).

and housed on the Diversionary Treatment Unit.[5] According to Plaintiff, stability code D is "the highest grade of mental health classification," and an assignment of this code prevents a prisoner from being placed on the restricted release list (the "RRL"),[6] *i.e.*, solitary confinement. (*Id.* at ¶ 157(c)–(d)).[7] On April 15, 2021, a disciplinary hearing regarding the SCI Camp Hill incident was held before Defendant Collins, which resulted in Plaintiff receiving a 110-day sentence on disciplinary custody status.

On July 7, 2021, a Program Review Committee hearing was conducted, and Plaintiff was informed that SCI Rockview administrators, Defendants Solomon, Rivello, and Rowe, would pursue Plaintiff's placement on the RRL. On July 8, 2021, Dr. Weber "was made aware that administrators were pursuing an indefinite form of solitary confinement ([administrative custody][8]/RRL status) for" Plaintiff. (Pl's Reply, ECF 45, at pp. 11–12). In response, Dr. Weber opined that he did "not believe this [was] necessary and in fact [thought] that this would ultimately result in increasing [Plaintiff's] risk of future staff assaults/behavioral problems." (ECF 4-1, Ex. B, at p. 8). Dr. Weber further opined that "there is a high likelihood" that Plaintiff could "function more than appropriately in a general population setting for years and years to come." (*Id.*). On July 11, 2021, Plaintiff's status was changed to administrative custody to be reviewed for placement on the RRL. During this time, Defendant Gross and Dr. Adam Bloom denied Plaintiff an assignment of stability code D, a determination with which Dr. Weber disagreed.

On February 2, 2022, Plaintiff was placed on the RRL pursuant to the recommendation of Defendants Bickell, Ferguson, Marsh, Solomon, Rivello, Rowe, Sorber, and Luquis.[9] On February 16, 2022, Plaintiff was informed of this

---

[5] The Diversionary Treatment Unit is "[a] grouping of cells in a[ Restricted Housing Unit] setting where upon reception, inmates are immediately scheduled and offered programming equivalent to the [Secure Residential Treatment Unit], e.g., a minimum of 20 hours out-of-cell programming per week, 10 structured **hours** and 10 unstructured **hours**." (DOC Inmate Discipline at p. 1).

[6] According to the DOC's Administrative Procedures, when an inmate "poses a threat to the secure operation of the facility and where a transfer to another facility or jurisdiction would not alleviate the security concern[,] . . . [t]he [f]acility [m]anager/designee may request that an inmate be placed on the RRL." (DOC Admin. Procs. § 1(C)(1)).

[7] Other evidence in the record calls this assertion into question.

[8] The Pennsylvania DOC defines administrative custody as "a status of confinement for non-disciplinary reasons that provides closer supervision, control, and protection than is provided in general population (GP). An inmate confined in this status shall not have the same privileges available as in GP." (DOC Admin. Procs. § 3(A)(1) at p. 3-1).

[9] Plaintiff asserts that Defendant Little was the "only official authorized to place [Plaintiff] on the RRL" in February of 2022 when Defendants Bickell, Ferguson, Marsh, Solomon, Rivello, Rowe, Sorber, and Luquis recommended that Plaintiff be placed there. (*See* Compl., ECF 2, at ¶¶ 139–42, 145–47, 149–

3

status change at a Program Review Committee hearing and transferred to SCI Phoenix to participate in a six-phase program called the Intensive Management Unit (the "IMU").[10] Each phase of this program has a minimum term and progresses downwards from Phase 6 until a prisoner reaches Phase 1, at which point the prisoner can return to the general population. While on the IMU, Plaintiff is allowed to participate in some out-of-cell activities without wearing restraints and meet with psychology staff. Plaintiff is currently in Phase 3 of the IMU program. His status is reviewed by a Program Review Committee once a week and Plaintiff is allowed to attend Psychiatric Review Team meetings once a month.

Plaintiff alleges he has spent approximately two years in solitary confinement, except for two brief stints from April 22, 2022, to May 21, 2022, and June 30, 2022, to August 17, 2022, when he was housed in the Cumberland County Prison in the general population without restraints for judicial proceedings related to his altercation with a correctional officer on March 25, 2021. Plaintiff spends 19-20 hours a day in a small cell that is illuminated for 24 hours a day where he hears "a barrage of extreme noise from his peers and staff screaming, arguing, and/or banging on cell structures, as well as jingling keys and slamming doors." (Pl's. Mot., ECF 4, at p. 4). These conditions have exacerbated Plaintiff's C-PTSD as well as his irritable bowel syndrome, gastritis, and gastro esophageal reflux disorder, causing him to vomit periodically and experience nausea, loss of appetite, complications swallowing, and chest, esophageal, and intestinal pains. When Plaintiff leaves his cell, he is subjected to a mandatory visual body-cavity strip search and then mechanically restrained during an escort. He must remain vigilant of other prisoners expelling, throwing, or smearing their bodily waste in any area of the unit. For most out-of-cell activities, virtual visits, law library sessions, and medical and psychological appointments, Plaintiff is restrained. His ability to speak on the phone with others is limited.

**LEGAL STANDARD**

Federal Rule of Civil Procedure ("Rule") 65 governs the issuance of injunctions and restraining orders. Fed. R. Civ. P. 65. Injunctive relief is extraordinary in nature and available only in limited circumstances. *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) ("[A] preliminary

---

50). Currently, Defendants Harry and Bickell have "co-equal authority to remove him from the RRL and into [general population]." (*Id.* at ¶¶ 139–40).

[10] According to Defendants, the IMU "is a phased program with incentives designed to assist inmates in achieving sufficient coping skills, behavioral control, and emotional regulation so that they can live successfully in a general population setting in the future with minimal supervision by staff." (Grady Decl., ECF 53-1, at ¶ 2). Plaintiff disputes this characterization. (Pl's. Decl., ECF 57, at p. 15 ¶ 6).

injunction is an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion."); *see also P.C. Yonkers, Inc. v. Celebrations the Party and Seasonal Superstore, LLC*, 428 F.3d 504, 508 (3d Cir. 2005) (holding that plaintiff bears burden of establishing each element in his or her favor before court may award this "extraordinary remedy"); *O'Neill v. Twp. of Lower Southampton*, 2000 WL 337593, at *1 (E.D. Pa. Mar. 30, 2000) ("The grant of an injunction, prior to a full hearing on the merits, is an extraordinary remedy and requires Plaintiff to meet a high burden of proof."). When ruling on a request for injunctive relief, a court must consider four factors: (1) whether the movant has shown a likelihood of success on the merits; (2) whether the movant will be irreparably injured by denial of the relief; (3) whether granting preliminary relief will result in even greater harm to the non-moving party; and (4) whether granting the preliminary relief is in the public interest. *Crissman v. Dover Downs Ent. Inc.*, 239 F.3d 357, 364 (3d Cir. 2001).

In *Reilly v. City of Harrisburg*, the United States Court of Appeals for the Third Circuit (the "Third Circuit") clarified a movant's burden when seeking a preliminary injunction and held that a movant must first demonstrate "a better than negligible chance" of prevailing on the merits and that "it is more likely than not" that the movant will suffer irreparable harm in the absence of a preliminary injunction. 858 F.3d 173, 179 (3d Cir. 2017). If a movant meets these two gateway requirements, the court then "considers the remaining two factors and determines in its sound discretion if all four factors, taken together, balance in favor of granting the requested preliminary relief." *Id*. When the requested preliminary injunction "is directed not merely at preserving the status quo but . . . at providing mandatory relief, the burden on the moving party is particularly heavy." *Punnett v. Carter*, 621 F.2d 578, 582 (3d Cir. 1980).

A court may rule on a motion for a preliminary injunction without holding an evidentiary hearing where there are no relevant facts in dispute. *See Kos Pharms., Inc v. Andrx Corp.*, 369 F.3d 700, 719 n.16 (3d Cir. 2004) ("[W]here the motion turns on a disputed factual issue, an evidentiary hearing is ordinarily required."); *see also Williams v. Curtiss-Wright Corp.*, 681 F.2d 161, 163 (3d Cir. 1982) (stating that "[i]t has long been recognized that a preliminary injunction may issue on the basis of affidavits and other written evidence, without a hearing, if the evidence submitted by both sides does not leave unresolved any relevant factual issue"). Here, the facts relevant to the instant motion are not in dispute and, therefore, a hearing is not necessary to address the motion.

**DISCUSSION**

Limiting his arguments to his Eighth Amendment claims, Plaintiff asserts that he has met each of the four factors required for a preliminary injunction under Rule 65 which mandates that he be placed in the general population Residential Treatment Unit and provided appropriate psychotherapeutic counseling and medical care. This Court disagrees.

As noted, Plaintiff has the burden, when seeking a preliminary injunction, to first demonstrate "a better than negligible chance" of prevailing on the merits and, second, that "it is more likely than not" that he will suffer irreparable harm in the absence of a preliminary injunction. *See Reilly*, 858 F.3d at 179. Plaintiff argues that he is likely to succeed on the merits of his Eighth Amendment claim because his nearly two years spent in solitary confinement coupled with his serious mental illness constitutes cruel and unusual punishment. To establish a likelihood of success on the merits, "the movant need only prove a 'prima facie case,' not a 'certainty' [he'll] win." *Issa v. Sch. Dist. of Lancaster*, 847 F.3d 121, 131 (3d Cir. 2017). The Third Circuit "do[es] not require that the right to a final decision after trial be 'wholly without doubt'; the movant need

6

only show a 'reasonable probability' of success." *Id.* (quoting *Punnett v. Carter*, 621 F.2d 578, 583 (3d Cir. 1980)).

"The Eighth Amendment 'prohibits any punishment which violates civilized standards and concepts of humanity and decency.'" *Clark v. Coupe*, 55 F.4th 167, 179 (3d Cir. 2022) (citations omitted). "A claim of inhumane prison conditions may rise to the level of an Eighth Amendment violation where the prison official 'deprived the prisoner of the minimal civilized measure of life's necessities' and 'acted with deliberate indifference in doing so, thereby exposing the inmate to a substantial risk of serious damage to his future health." *Palakovic v. Wetzel*, 854 F.3d 209, 225 (3d Cir. 2017) (citations omitted). Thus, Plaintiff must demonstrate **both** that (1) he has been subjected to an objectively serious deprivation of life's basic needs or a substantial risk of serious harm to his health and (2) that Defendants knew of and were deliberatively indifferent to that deprivation of risk. *Farmer v. Brennan*, 511 U.S. 824, 834 (1994); *see also Clark*, 55 F.4th at 183 ("Despite the threat of harm posed by isolation, we recognize that solitary confinement does not *per se* violate the Constitution as long as the conditions of confinement are not foul, inhuman, or totally without penological justification." (internal quotation marks and citations omitted)); *Porter v. Pa. Dep't of Corrs.*, 974 F.3d 431, 441 (3d Cir. 2020). Because this Court finds that Plaintiff has failed to meet his burden with respect to deliberate indifference, the Court will address only that element.

To sustain his Eighth Amendment claims, Plaintiff must demonstrate that Defendants acted with deliberate indifference to his mental health when placing him on the RRL. *See Farmer*, 511 U.S. at 834. "To act with deliberate indifference to serious medical needs is to recklessly disregard a substantial risk of serious harm." *Palakovic*, 854 F.3d at 227. "[T]o demonstrate a defendant's deliberate indifference[,] an inmate need not show that the defendant intentionally sought to cause

7

the inmate harm or acted with knowledge that harm to the inmate probably would result from the defendant's act or failure to act." *Chavarriaga v. N.J. Dep't of Corr.*, 806 F.3d 210, 227 (3d Cir. 2015) (citing *Farmer*, 511 U.S. at 835–36). "Though purposeful conduct would show at least deliberate indifference, an inmate satisfies [his] burden to make that showing if [he] demonstrates that the defendant acted or failed to act despite having knowledge that [his] actions or inaction . . . would subject the inmate to a substantial risk of serious harm." *Id.* (citing *Farmer*, 511 U.S. at 842).

Here, Plaintiff admits that he was involved in an altercation with a correctional officer on March 25, 2021, which led to his placement on the RRL. (*See* Pl's. Reply, ECF 57, at pp. 7–8). Plaintiff, however, argues that he fully served the 110-day sanction for the assault, yet remains confined. Plaintiff further argues that because his various mental illnesses were known to Defendants, he should have been placed in the Secure Residential Treatment Unit[11] instead of on the RRL. In support of his argument, Plaintiff cites to Dr. Weber's recommendations wherein he opined that Plaintiff should be assessed stability code D and believed "there is a high likelihood" that Plaintiff could "function more than appropriately in a general population setting for years and years to come." (ECF 4-1, Ex. B at p. 8). Plaintiff also relies on the deposition testimony offered by Defendant Bickell from another case in which Defendant Bickell testified that, when deciding whether to continue a prisoner's placement on the RRL, he "review[s] the psych report." (*See* Pl's. Reply, ECF 45, Ex. D at p. 49, 29:08–16). As this same deposition testimony makes clear, however, the "psych report" is not dispositive of whether someone gets off the RRL. Rather, as Defendant Bickell further testified, he also considers "misconduct history, severe misconduct

---

[11] The Secure Residential Treatment Unit "is designed to provide management, programming, and treatment for an individual who exhibits [a s]erious [m]ental [i]llness (SMI), chronic disciplinary issues, and demonstrates an inability to adapt to a general population setting." (Pl's. Reply, ECF 45, at p. 13 (citing PA DOC Access to Mental Health Care § 10(A)(1))).

8

history, how are you doing in programs." (*Id.* at 31:09–11).  Notably, this testimony is consistent with the prison's policies.  Under the DOC's Administrative Custody Procedures:

> The Facility Manager/designee may request that an inmate be placed on the RRL when he/she poses a threat to the secure operation of the facility and where a transfer to another facility or jurisdiction would not alleviate the security concern.
>
> \*\*\*
>
> Criteria for placing an inmate on the RRL includes, but is not limited to, the following:  (a) assaultive history against staff; (b) assaultive history against inmate(s); (c) perpetuated sexual abuse history; (d) escape history, or serious escape attempt; and/or (e) threat to the orderly operation of a facility.

(*See* Pl's. Reply, ECF 45, at p. 13 (citing DOC Admin. Procs. § C(1))).

Here, Plaintiff admitted to the misconduct for which he was originally placed in disciplinary custody.  (Pl's. Reply, ECF 57, at p. 8).  According to the testimony of Defendant Bickell and the prison policy quoted above, such conduct warrants the inmate's placement in the RRL for penological reasons.  Plaintiff does not dispute that he met the prison policy criteria for placement on the RRL.  He also acknowledges that two other physicians disagreed with Dr. Weber's recommendation.  Moreover, Plaintiff presents no evidence to support his argument that Defendants Bickell, Ferguson, Marsh, Solomon, Rivello, Rowe, Sorber, and Luquis failed to consider Plaintiff's psych report or mental illnesses before determining that Plaintiff should be placed on the RRL or that his placement on the RRL was not justified.  *See Bramble v. Wetzel*, 2022 WL 55021, at \*8 (M.D. Pa. Jan. 5, 2021) (holding that where plaintiff failed to show "that there was no legitimate penological objective for his placement in" RRL and defendant provided justification "grounded in [plaintiff's] history of crime and institutional misconduct," plaintiff's Eighth Amendment claim failed).  In light of the record evidence, this Court cannot conclude, at this stage of the litigation, that Plaintiff has met his burden of showing that Defendants were

deliberately indifferent to Plaintiff's serious medical needs. *See Williams v. Wingard*, 2016 WL 4701495, at *2 (W.D. Pa. Sept. 8, 2016) ("[P]rison administrators should be accorded wide-ranging deference in the adoption and execution of policies and practices that are needed to preserve internal order and to maintain institutional security."); *see also Rhodes v. Chapman*, 452 U.S. 337, 349 n.14 ("[A] prison's internal security is peculiarly a matter normally left to the discretion of prison administrators."). Under these circumstances, Plaintiff has not met his burden on this argument warranting the requested preliminary injunction.

Plaintiff also argues that placing him on the RRL is cruel and unusual because it does not provide him with the treatment he needs to prevent the exacerbation of his mental and physical ailments. Plaintiff's contention, however, is rebutted by the evidence presented. In particular, the evidence shows, and Plaintiff does not dispute, that he is currently in a six-phase program (the IMU) that provides various treatments and allows Plaintiff to progress towards general population. Defendants explain that "[i]nmates begin the program in Phase 6 and progress downward to 5, 4, and so on. Plaintiff has already progressed to Phase 3. Should he progress to Phase 1, he will be in general population for this final phase with all the privileges afforded to general population inmates." (Grady Decl., ECF 53-1, at ¶¶ 8–9). Plaintiff's status on the RRL is also "reviewed by a Program Review Committee once a week, and he is given an opportunity to attend Psychiatric Review Team meetings once a month." (Grady Decl., ECF 53-1, at ¶ 12). While he is on the IMU, he "is afforded many opportunities for meaningful social interaction." Notably, Plaintiff "frequently refuses" to participate. (*Id.* at ¶¶ 14–15). Plaintiff does not dispute that he does not participate in the offered activities but attributes his lack of participation to the fact that the majority of the out-of-cell activities are "conducted with some form of mechanical restraints" and the offered activities expose him to other seriously mentally ill prisoners' "unpredictable, erratic,

10

and volatile" behavior. (Pl's. Reply, ECF 57, at p. 10). While Plaintiff may have legitimate, personal reasons for not participating in the offered activities, such reasoning does not transform Defendants' placement of Plaintiff on RRL into an act of deliberate indifference, particularly when he is afforded opportunities to leave his cell for up to "36 hours in [one] week." (Defs'. Mot., ECF 53, at p. 4). Thus, Plaintiff has not met his burden at this stage of presenting evidence which shows Defendants' deliberate indifference by placing him on the RRL which he asserts exacerbates his mental and physical ailments.

In sum, this Court finds that, at this stage of litigation, Plaintiff has not met his preliminary injunction burden for the relief he seeks — his ***immediate*** removal from the RRL. Notwithstanding, this Court's conclusions with respect to Plaintiff's motion for a preliminary injunction do not preclude Plaintiff's pursuit of his Eighth Amendment claim.

**CONCLUSION**

For the foregoing reasons, the motion for a preliminary injunction is denied. *See Reilly*, 858 F.3d 179 (3d Cir. 2017). An Order consistent with this Memorandum Opinion follows.

*NITZA I. QUIÑONES ALEJANDRO*, J.